UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*filed in open court 8/30/2005*

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | Cr. No. 05-40035-FDS |
| ) | |
| RICHARD BOTCHWAY ) | |
|     aka Ismaila Amoo, ) | |
|     aka Senica Allen, ) | |
|     aka Francisco Oni, ) | |
| ) | |
| Defendant ) | |

**GOVERNMENT'S MEMORANDUM OF LAW REGARDING ADVERSE WITNESSES AT A DETENTION HEARING**

The United States of America, by Michael J. Sullivan, U.S. Attorney, and John M. Hodgens, Jr., Assistant U.S. Attorney, hereby files its memorandum of law regarding adverse witnesses at a detention hearing.

The Government has reason to believe that Richard Botchway, the defendant ("defendant"), will attempt to call Massachusetts State Police Trooper William Pinkes ("Trooper Pinkes") as a witness. Trooper Pinkes conducted the traffic stop in this case, which led the recovery of certain evidence. The Government anticipates that the defendant will, at the appropriate time, move to suppress that evidence.

The Government submits that the Court should not permit the defendant to call Trooper Pinkes at this juncture of the proceedings as calling him would be a premature 'fishing expedition' where no motion to suppress has been filed by the defendant, there has been no opportunity for the Government to

respond to such a motion, and no evidentiary hearing has been scheduled by the court. See Fed. R. Crim. P. 12(b)(3)(C)(a motion suppress must be raised before trial).

Further, the Government submits that the Defendant has no absolute right to call Trooper Pinkes. Rather, it is within the Court's discretion to permit it. See, e.g., United States v. Joost, 42 F.3d 1384, 1994 WL 667011, **3-4 (Table)(1st Cir. 1994)(Unpublished), a copy of which is attached hereto as Exhibit A. In Joost, the defendant appealed from a pretrial order of detention. At a detention hearing, the Government submitted an affidavit of an FBI agent, which relied upon statements made to him by two State Police detectives who infiltrated a conspiracy to rob an armored car. On appeal, the defendant claimed that "he was unfairly deprived of the opportunity to call the two detectives as witnesses." **3. Joost claimed that his rights were violated under §3142(f) to 'present witnesses' and to 'cross-examine witnesses who appear at the hearing.' The First Circuit upheld the district court's refusal to subpoena these witnesses as requested by the defendant. "It is likewise within the court's discretion whether to permit a defendant to call adverse witnesses to the stand; no absolute right to do so exists." **4. At a minimum, what should be required of the defendant is a proffer of the reasons why he wants to call Trooper Pinkes and how those reasons relate to the detention/release calculus, as opposed to question of suppression.

2

## Conclusion

For the foregoing reasons, the Court should not permit the defendant to call Trooper Pinkes at this juncture.

Respectfully submitted,

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

By: /s/ John M. Hodgens, Jr.
JOHN M. HODGENS, JR.
Assistant U.S. Attorney

ss., Worcester

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served by hand upon counsel of record on this the 30th day of August, 2005.

/s/ John M. Hodgens, Jr.
JOHN M. HODGENS, JR.
Assistant U.S. Attorney

**A**

EXHIBIT A

42 F.3d 1384 (Table)                                                                                             Page 1
42 F.3d 1384 (Table), 1994 WL 667011 (1st Cir.(R.I.))
**Unpublished Disposition**
(Cite as: 42 F.3d 1384, 1994 WL 667011 (1st Cir.(R.I.)))

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA1 Rule 36 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals,
First Circuit.
UNITED STATES, Appellee,
v.
Robert M. JOOST, Defendant, Appellant.
Nos. 94-2085, 94-2086.

Nov. 30, 1994.

APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Mary M. Lisi, *U.S. District Judge* ]

*Robert Joost* on Memorandum pro se.

*Sheldon Whitehouse,* United States Attorney, *James H. Leavey* and *Margaret E. Curran,* Assistant United States Attorneys, on Memorandum for appellee.

D.R.I.

AFFIRMED.

Before Torruella, *Chief Judge,* Boudin and Stahl, *Circuit Judges.*

Per Curiam.

**1 Defendant Robert **Joost,** who has elected to proceed pro se, appeals from an order of pretrial detention. The magistrate-judge and the district judge, following separate hearings, each found by clear and convincing evidence that detention was required on the ground of dangerousness. *See* 18 U.S.C. § 3142(e). Having conducted an independent review tempered by deference to the lower court's determination, *see, e.g., United States v. O'Brien,* 895 F.2d 810, 814 (1st Cir. 1990), we affirm.

I.

Except where noted, the following facts appear undisputed based on those portions of the record that have been presented. [FN1] On August 3, 1994, an indictment was returned in Rhode Island charging defendant with conspiracy to rob an armored car, in violation of the Hobbs Act, 18 U.S.C. § 1951, and with possession of firearms by a convicted felon, in violation of 18 U.S.C. § 922(g). Immediately following defendant's arraignment on August 5, the magistrate conducted a detention hearing and ordered that he be detained; a written order explicating the magistrate's reasoning was filed on August 23. By way of a motion apparently submitted on August 22, defendant sought review of this ruling. [FN2] The district judge held a hearing on September 29 and issued a written decision four days later affirming the detention order. Defendant has now filed a pair of appeals challenging this determination.

Both below and on appeal, the government has placed principal reliance on an August 4, 1994 affidavit by FBI Special Agent Brosnan detailing the events giving rise to the instant charges. Brosnan, in turn, relies principally on statements made to him by two state police detectives who had successfully infiltrated defendant's operation. Several discrete incidents are described in which defendant allegedly plotted criminal activities with the undercover detectives and others. One of these involved a planned armed robbery of an armored car expected to be carrying "possibly millions of dollars in gold." Some months before the robbery was to occur, it is averred that defendant and the detectives spent four hours in June 1994 conducting surveillance of the armored car company. The preparations included instructions from defendant to the detectives to handcuff the guards and tape their mouths shut; if any of the guards caused trouble, they were told "to kill [him] with a firearm equipped with a silencer." These allegations form the basis for the Hobbs Act charge.

In another such incident that same month, defendant is said to have given a loaded semi-automatic pistol to the detectives for use in a planned robbery of "an armed club manager in Cape Cod." He instructed

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 F.3d 1384 (Table)
(Cite as: 42 F.3d 1384, 1994 WL 667011, **1 (1st Cir.(R.I.)))

Page 2

the detectives to dispose of the gun "if they had to shoot the manager" but otherwise to return it. These allegations form the basis for the felon-in-possession charge. In addition, Brosnan recounts the detectives' description of other criminal conduct not contained in the instant indictment-including counterfeiting activities and the planned robberies of a delivery truck, a restaurant, an American Legion post, and a Pennsylvania warehouse. As to this last incident, he relates that defendant and the detectives actually travelled to Pennsylvania in May 1994 to commit the robbery, only to be thwarted by local police pursuant to covert arrangements made by the detectives. [FN3]

**2 Defendant's criminal record includes three long-ago convictions for breaking and entering with intent to commit larceny. [FN4] In addition, he was convicted in the mid-1970's of conspiracy to violate the civil rights of another, with death resulting. The facts underlying this conviction are detailed in *United States v. Guillette*, 547 F.2d 743, 746-47 (2d Cir. 1976), *cert. denied*, 434 U.S. 839 (1977). In brief, defendant was indicted in 1972, along with others, on a charge of interstate transportation of automatic firearms that had been stolen from a National Guard armory. Shortly before trial, the government's key witness was killed when a bomb exploded in his home. A jury subsequently acquitted defendant on charges of intimidating a witness by force and using a dynamite bomb to commit a felony, but convicted him on the charge of conspiracy with death resulting. As the Second Circuit observed, "Despite the acquittals on the substantive charges and the finding that Joost had no culpable participation in the actual bombing, the jury was free to find that Joost was an active member of the conspiracy which resulted in [the witness'] death." *Id.* at 755. Defendant was free on bail with respect to the pending firearms indictment during the time he committed this crime. He was imprisoned from 1973 until 1987 on account of such offense.

Defendant is approximately 50 years of age. He is said to be separated from his wife, who resides in Boston with their four-year-old son. Apart from his elderly mother, defendant has no other family ties in Rhode Island. He is currently unemployed and without financial resources.

II.

Defendant raises five issues on appeal, in which he mostly complains of alleged irregularities in the lower court proceedings. We shall address these seriatim.

1. Defendant first contends, in a two-pronged argument, that neither of the hearings conducted below was timely. Under 18 U.S.C. § 3142(f), a detention hearing is to be held "immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance." As mentioned, the magistrate took up the issue of pretrial detention immediately following defendant's arraignment. Defendant nonetheless insists that this hearing was a nullity. He explains that attorney Arthur Chatfield (who is said to be a friend of the defendant's) appeared on his behalf that day solely for purposes of arraignment. Defendant's "memory" is that he informed the magistrate that he needed time to decide whether Chatfield (or another attorney) would represent him at the detention hearing or whether he would appear pro se. He "believes" that no argument was offered in opposition to the government's request for detention. It was therefore his "understanding" that an "implied continuance" had been granted and that he was being temporarily detained pending a renewed hearing. As we understand his argument, defendant is not claiming a violation of his right to counsel as provided for in 18 U.S.C. § 3142(f). [FN5] Instead, he is alleging that the hearing was postponed because of uncertainties as to the status of his representation and was never rescheduled. He thus insists that the September 29 hearing before the district judge constituted his initial detention hearing-one occurring well past the statutory time limits.

**3 The absence of a transcript precludes definitive resolution of these assertions. Yet it is apparent that defendant's "understanding" that a continuance had been ordered was in fact a misunderstanding; neither the magistrate nor the district judge made any reference thereto in their written orders. Indeed, defendant himself alluded to this point only obliquely in his motion to the district judge seeking release. Moreover, even were we to assume *arguendo* that the time constraints imposed by § 3142(f) were somehow violated, defendant's release would not thereby be compelled. *See United States v. Montalvo-Murillo*, 495 U.S. 711, 716-17 (1990) ("Neither the timing requirements nor any other part of the Act can be read to require, or even suggest,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 F.3d 1384 (Table)                                                     Page 3
(Cite as: 42 F.3d 1384, 1994 WL 667011, **3 (1st Cir.(R.I.)))

that a timing error must result in release of a person who should otherwise be detained."). [FN6] Defendant, noting that the *Montalvo-Murillo* Court refrained from specifying the appropriate remedy for "conduct that is aggravated or intentional," id. at 721, suggests that the government's conduct here was of this ilk. [FN7] To the contrary, we find nothing in the present record to suggest that the government contributed to the delay in resolving defendant's bail status.

In the alternative, defendant argues that the district judge failed to conduct a "prompt" review of the magistrate's detention order, as required by 18 U.S.C. § 3145(b). The docket sheet reveals that his motion for release was filed on August 22, 1994-some 42 days before it was denied. Yet defendant has elsewhere acknowledged that this motion was initially rejected for filing because of noncompliance with local court rules; he here admits that it was "refiled" on September 9. The precise circumstances giving rise to this procedural snag are not evident from the instant record (although it appears that they derived at least in part from defendant's pro se status). What is evident is that, once the matter was formally presented for decision, the district judge acted with reasonable promptness-issuing a scheduling order on September 23, holding a hearing on September 29, and rendering a decision on October 3. And again, even if a deviation from the timeliness requirement were thought to exist, it would provide no grounds for defendant's release under the teachings of *Montalvo-Murillo*.

2. Defendant next argues that he was unfairly deprived of the opportunity to call the two detectives as witnesses. He does not object to the fact that the government presented their testimony by way of hearsay contained in the Brosnan affidavit. See, e.g., *United States v. Acevedo-Ramos*, 755 F.2d 203, 204 (1st Cir. 1985) ("the lawfulness of the practice of using hearsay evidence at bail hearings is well established"). He insists, however, that the court's refusal to subpoena these witnesses as he requested violated his rights under § 3142(f) to "present witnesses" and "to cross-examine witnesses who appear at the hearing." We disagree.

**4 A district court has wide discretion in determining the form of evidentiary presentation at a bail hearing, such as whether to proceed by live testimony or by proffer. See, e.g., *United States v. Hurtado*, 779 F.2d 1467, 1480 (11th Cir. 1985). It is likewise within the court's discretion whether to permit a defendant to call adverse witnesses to the stand; no absolute right to do so exists. See, e.g., *United States v. Gaviria*, 828 F.2d 667, 669-70 (11th Cir. 1987) (upholding denial of request to call government case agent; holding that defendant "has only a conditional right to call adverse witnesses" and that whether defendant must make "initial proffer of the expected benefit of the witness's testimony" lies within court's discretion); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986) ("Without a proffer from Winsor that the government's proffered information was incorrect, the magistrate was not required to allow Winsor to cross-examine the investigators and police officers."); *United States v. Delker*, 757 F.2d 1390, 1397-98 (3d Cir. 1985) (upholding lower court's refusal "to subpoena the witnesses whose out-of-court statements linked appellant" to the crimes charged).

We need not explore the precise contours of the district court's discretion in this regard, inasmuch as the reasons advanced by defendant for calling the detectives prove insubstantial. Defendant proffered to the court below (he now tells us) that his interrogation of the detectives would have refuted the allegation of dangerousness by establishing: (1) that they had sought his permission to "beat up an informer" but he had told them "to leave the man alone"; and (2) that they had attempted to obtain a gun from him in order to "shoot a person" but he had talked them out of it. From all that appears from this proffer, however, these alleged incidents have no bearing on the various charges contained in the Brosnan affidavit (and outlined above) that undergird the finding of dangerousness here. We therefore find that the court acted within its discretion in declining to expand the scope of the hearing. [FN8]

3. Defendant next alleges that the district court "did not properly consider" imposing one or more of the conditions of release enumerated in § 3142(c). [FN9] As it turns out, his argument in this regard pertains to a set of conditions not there mentioned-his offer to abide by a combination of electronic monitoring and home confinement. The court did, in fact, explicitly consider and reject this proposal, finding that it would not "reasonably assure the

42 F.3d 1384 (Table)                                                                                   Page 4
(Cite as: 42 F.3d 1384, 1994 WL 667011, **4 (1st Cir.(R.I.)))

safety of the community." Defendant's argument thus reduces to an assertion that the court erred in so concluding. At least on the present record, we find this contention unpersuasive.

In *United States v. Tortora*, 922 F.2d 880 (1st Cir. 1990), on which the district court relied, we observed that "electronic monitoring, while valuable in pretrial release cases (especially in allowing early detection of possible flight), cannot be expected to prevent a defendant from committing crimes ... within the monitoring radius." *Id.* at 887. Defendant's attempts to distinguish this decision prove unavailing. For example, he points out that he is not an organized crime member owing allegiance to a criminal organization (as was the case there), but instead is alleged to be a "lone operator." Yet the Brosnan affidavit discloses a proclivity on defendant's part to recruit associates to assist in the perpetration of his crimes. And we note that much of the criminal plotting there described took place in defendant's residence. Defendant also maintains that there has been no suggestion that he "has violated a condition of bail in the past." To the contrary, as noted above, his involvement in the conspiracy to murder a federal witness occurred while he was free on bail. Defendant, in any event, has proffered no evidence to suggest that a home-confinement monitoring system "is readily available or workable." *United States v. Perez-Franco*, 839 F.2d 867, 870 (1st Cir. 1988) (per curiam). Under these circumstances, we decline to disturb the district court's finding. [FN10]

**5 4. Defendant also argues that his prior convictions occurred too long ago to be of any evidentiary relevance. He points out that under 18 U.S.C. § 3142(e)(3), past crimes of violence can give rise to a presumption of dangerousness only if "a period of not more than five years has elapsed since the date of conviction." Yet the district court did not rely on any such presumption. Instead, it took note of these earlier crimes pursuant to the directive in § 3142(g)(3) to consider a defendant's "criminal history." This provision contains no time restrictions. Given the nature of defendant's prior convictions, and given that he was in prison for much of the intervening period, the court's consideration of such evidence was obviously justified.

5. Finally, defendant complains that his continued detention will interfere with his defense preparations. To the extent he is insisting upon his immediate release for this reason, his argument is groundless. While an incarcerated defendant proceeding pro se must be afforded sufficient accommodations to prepare for trial, *see, e.g., Tate v. Wood*, 963 F.2d 20, 26 (2d Cir. 1992); *Milton v. Morris*, 767 F.2d 1443, 1445-46 (9th Cir. 1985); *cf.* 18 U.S.C. § 3142(i) (permitting "temporary release" under government supervision where "necessary for preparation of the person's defense"), the outright release of such an individual is obviously unwarranted under such circumstances. *Cf. Barham v. Powell*, 895 F.2d 19, 22-24 (1st Cir.) (finding accommodations made to permit pro se defendant to prepare for trial while in prison constitutionally sufficient), *cert. denied*, 495 U.S. 961 (1990). Alternatively, to the extent defendant is seeking to modify the conditions of his confinement in order to facilitate his trial preparations, his argument is unrelated to the issue of bail and is otherwise premature. We note in this regard that defendant has accused government officials of taking punitive measures against him for the purpose of obstructing such preparations-including allegedly holding him "incommunicado" in prison, "scaring away" his attorney, and prohibiting his use of the telephone and the mails. These contentions have apparently been the subject of a recent district court hearing. Any consideration thereof by this court must await another day.

III.

Perhaps unmindful of the independent review conducted by this court, defendant has mounted no direct challenge to the finding of dangerousness. We shall therefore refrain from setting forth a detailed discussion thereof. We simply note our agreement with the district court that the evidence of record establishes, in clear and convincing fashion, that no set of release conditions would reasonably assure the safety of the community. In so concluding, we deem particularly noteworthy the wide-ranging scope of defendant's recent criminal involvement, the violent nature of such activity, and his earlier participation, while free on bail, in the successful plot to murder a key witness against him.

**6 *The order of pretrial detention is affirmed.*

FN1. The record before us does not contain a copy of the indictment or the transcripts from the two

42 F.3d 1384 (Table)  
(Cite as: 42 F.3d 1384, 1994 WL 667011, **6 (1st Cir.(R.I.)))

Page 5

hearings below. We are nonetheless obligated to decide the appeal "promptly" on the basis of "such papers, affidavits, and portions of the record as the parties shall present." Fed. R. App. P. 9(a).

FN2. As explained *infra,* the question as to when this motion was filed is not free of ambiguity.

FN3. The government also alleges that defendant told the detectives he was contemplating killing his estranged wife. This contention, said to have been made by proffer below, is not contained in the Brosnan affidavit and was not mentioned by the district court. Defendant's wife has since submitted an affidavit dismissing the allegation as "ridiculous" and offering to return to Rhode Island to take "custody" of her husband. Under the circumstances, we choose not to rely on this charge.

FN4. Defendant states, without rebuttal, that these all arose out of a "single transaction" occurring in 1963, when he was 19 years of age.

FN5. To the extent defendant did intend to advance this argument on appeal (as he did below), it would provide no basis for release. As was the case in *United States v. Vargas,* 804 F.2d 157 (1st Cir. 1986) (per curiam), even if we were to assume that defendant "did not have an adequate detention hearing before the magistrate, any defects were cured by the subsequent *de novo* hearing held by the district court." *Id.* at 162; *see also United States v. Montalvo-Murillo,* 495 U.S. 711, 720 (1990) ("there is no reason to bestow upon the defendant a windfall and to visit upon the Government and the citizens a severe penalty by mandating release of possibly dangerous defendants every time some deviation from the strictures of § 3142(f) occurs").

FN6. In reaching this conclusion, the Court noted that detention hearings take place "during the disordered period following arrest" and that "some errors in the application of the time requirements" will inevitably occur as a result. 495 U.S. at 720. As one such example, it cited "ambiguity in requests for continuances." *Id.*

FN7. Defendant advances a similar claim, mentioned *infra,* regarding the government's alleged interference with his trial preparations.

FN8. Defendant apparently also sought to call his wife as a witness to rebut the allegation that he had expressed an intention to harm her. And included in his proffer below was the allegation that the detectives had sought his permission "to beat up his estranged wife, but he had forbidden it." As we have placed no reliance on this factor, *see* note 3 *supra,* we need not address these matters.

FN9. The government mistakenly characterizes this argument as involving the factors set forth in § 3142(g).

FN10. Should he be able to establish a proper evidentiary foundation, of course, defendant remains free to request an appropriate modification of the detention order from the district court.

42 F.3d 1384 (Table), 1994 WL 667011 (1st Cir.(R.I.)), Unpublished Disposition

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.