**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | **CRIMINAL ACTION** |
| ) | **NO. 05-40035-FDS** |
| RICHARD BOTCHWAY, ) | |
| a/k/a Ismaila Amoo, ) | |
| a/k/a Senica Allen and ) | |
| a/k/a Francisco Oni, ) | |
| Defendant ) | |

**MEMORANDUM AND DECISION**
**ON THE GOVERNMENT'S MOTION FOR DETENTION**
**August 31, 2005**

**SWARTWOOD, M.J.**

I.  Nature of the Offense and the Government's Motion

On August 10, 2005, an Indictment was returned charging Richard Botchway a/k/a Ismaila Amoo, a/k/a Senica Allen, Francisco Oni ("Mr. Botchway"), with unlawful possession of a document making implement in violation of 18 U.S.C. §1028(a)(5).

At Mr. Botchway's first appearance in this Court on August 11, 2005, in connection with this Indictment, the Government moved for a detention hearing pursuant to 18 U.S.C. § 3142(f)(2)(A) (risk of flight).

A detention hearing was held in this case on August 30, 2005 at which Patrick R. Cummings, Special Agent of the United States Immigration and Customs Enforcement Agency ("ICE") testified on

behalf of the Government and was cross-examined by Mr. Botchway's counsel.  Additionally, Sophia Adu and Sheila Wilson testified on behalf of Mr. Botchway.

## II.   Findings Of Fact

1.   On July 13, 2005, a vehicle (a 2001 Mitsubishi, the "Mitsubishi") in which Mr. Botchway was a passenger was stopped for a tail light violation on the Massachusetts Turnpike in Auburn, Massachusetts by Massachusetts State Trooper William Pinkes ("Trooper Pinkes").

2.   The Mitsubishi was being driven by Scott A. Wilson ("Mr. Wilson").  In addition to Mr. Botchway and Mr. Wilson, there was a third male in the vehicle (later identified as Sanusi Mohammad, "Mr. Mohammad").

3.   Mr. Wilson produced a license at Trooper Pinkes' request, but was unable to produce a registration for the vehicle.  Trooper Pinkes asked Mr. Wilson to exit the vehicle and step to the rear so that he could show him the violation and question him further.

4.   When questioned, Mr. Wilson, who appeared nervous, told Trooper Pinkes that they were returning from visiting one of his passenger's girlfriend in Connecticut.

5.   Trooper Pinkes subsequently asked the passengers in the vehicle for identification.  Mr. Botchway produced an expired New Jersey driver's license and Mr. Mohammad produced a Massachusetts license.  Mr. Botchway told Trooper Pinkes that the men had come

2

from Delaware, had stopped in New York to visit a friend and were on their way to Leicester.

6.   Mr. Mohammad, who appeared nervous and evasive, told Trooper Pinkes that the car belonged to his girlfriend, Sophia. Mr. Mohammad told Trooper Pinkes that he and Mr. Wilson had gone to Delaware to pick up Mr. Botchway and that they were bringing Mr. Botchway to Leicester to stay with friends. Mr. Mohammad consented to a search of the vehicle. When Trooper Pinkes searched the trunk, he found a computer and a soft-sided briefcase. Trooper Pinkes looked in the briefcase and found papers belonging to Mr. Botchway. Mr. Botchway confirmed that the briefcase belonged to him. In the briefcase, Trooper Pinkes found numerous credit cards which were not in Mr. Botchway's name, checkbooks in the names of third-parties, credit card applications in the names of third parties, a stack of blank identification cards with magnetized strips on the back and identification cards/licenses in the names of third parties, but bearing photographs of Mr. Botchway. See Gov't Exs. 1,3,4.

7.   Mr. Botchway told Trooper Pinkes that he used the blank identification cards to make work Id's for peoples. He also admitted to making the licenses which were in other names and bore his photograph. Mr. Botchway told Trooper Pinkes that he made the identification documents on the computer which was in the trunk and that he printed them out on a printer which was also located in the

3

trunk.  As to the credit cards, Mr. Botchway told Trooper Pinkes that he had found them at different times.

8.    Trooper Pinkes seized the various identifications cards, licenses, other documents, the computer and the printer and cited the operator of the vehicle. However, the vehicle's occupants were released at the scene.

9.    On July 14, 2005, by prearrangement, Mr. Botchway came to the Massachusetts State Police Barracks in Holden, Massachusetts. Mr. Botchway came to the barracks to pick up his computer. Special Agent Cummings, who had come to the barracks to discuss the case with Trooper Pinkes and other troopers involved in the investigation, questioned Mr. Botchway.

10.   After claiming that he was a legal permanent resident, Mr. Botchway admitted to Special Agent Cummings that he had come to the United States in or about June 1985 on a student visa and that he was currently in the country illegally.  Additionally, after being advised of his *Miranda* rights, which Mr. Botchway acknowledged[1], Mr. Botchway admitted to Special Agent Cummings that the seized licenses and computer equipment belonged to him and that he was engaged in the business of supplying these documents to individuals to assist them in getting employment.  After this interview, Mr. Botchway was taken into ICE detention.

---

[1]Mr. Botchway signed an acknowledgment that he had been advised of his *Miranda* rights, but refused to sign a waiver of his rights without a lawyer present. Gov't Ex. 11. However, Mr. Botchway did not request a lawyer and agreed to be questioned.

4

11.  On July 19, 2005, Special Agent Cummings requested that Mr. Botchway, who was still in ICE custody, consent to a search of the computer. Mr. Botchway refused. The printer that was found in the trunk, which Mr. Botchway acknowledged was his, was manufactured in California and its only use is to make identification cards such as the ones seized from the briefcase. The printer ribbon was missing so Special Agent Cummings was unable to obtain confirmation that the identification cards found in the briefcase were produced on the printer (although the size and shape of the cards are consistent with those which would be produced by the printer). However, Special Agent Cummings did confirm that the identification cards/licenses were counterfeit.

12.  Special Agent Cummings obtained a search warrant to search the computer.  It was determined that numerous identification cards had been created on the computer. Gov't Ex. 8.

13.  Sophia Adu, who lives in Worcester, Massachusetts, testified that she was the owner of the Mitsubishi (which is registered in Connecticut). Ms. Adu had purchased the Mitsubishi in Connecticut on May 23, 2005. At that time, the vehicle was subjected to and passed an inspection, which Ms. Adu testified included a determination that the taillights were working.

14.  Ms. Adu submitted a picture of the Mitsubishi taken on an unspecified date in August 2005. Def. A.  The taillight does not appear to be malfunctioning (although it is not clear whether the

5

car is running, as it was when Trooper Pinkes allegedly observed
the malfunction). Ms. Adu also submitted a black and white picture
of the back of the Mitsubishi on July 10, 2005 (the vehicle had
been photographed running a red light in New York). Ex B.
Frankly, it is impossible to tell from the black and white,
somewhat fuzzy photograph whether the taillights were all
functioning properly. Nonetheless, I will assume, for purposes of
this Memorandum and Decision, that the Mitsubishi's taillights were
functioning on the day it was purchased, on July 10, 2005 and on
some unspecified date in August 2005.

### III. Discussion of the Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"),
the judicial officer shall order that, pending trial, the Defendant
be (1) released on his own recognizance or upon execution of an
unsecured bond; (2) released on a condition or combination of
conditions; (3) temporarily detained to permit revocation of
conditional release, deportation, or exclusion; or (4) detained. 18
U.S.C. § 3142(a). Under the Act, the judicial officer may detain
a person pending trial only if, after a detention hearing held
pursuant to 18 U.S.C. § 3142(f), the judicial officer determines
that "no condition or combination of conditions [set forth under 18
U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of
the person as required and the safety of any other person and the
community". 18 U.S.C. § 3142(e). The Supreme Court, in United

6

States v. Salerno, 481 U.S. 739, 747, 107 S.Ct. 2095 697 (1987) has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." Id. at 755, 107 S.Ct. at 2105. For this reason, the Defendant may be detained only if the judicial officer finds by (1) clear and convincing evidence, that the Defendant is a danger to the community, or (2) a preponderance of the evidence, that the Defendant poses a risk of flight. See 18  U.S.C. § 3142 (f); United States v. Jackson, 823 F.2d 4-5 (2d Cir. 1987); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562 (1986). See also United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991). Furthermore, the judicial officer "may not impose  financial condition that results in the pretrial detention of the person". 18 U.S.C. § 3142 (c).

The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted. See 18 U.S.C. § 3142 (f)(1). The Government may also move for detention, or the judicial officer may on his or her own motion move for detention, where the case involves a serious risk that the Defendant will flee or that the Defendant will obstruct or

attempt to obstruct justice.  18 U.S.C. § 3142(f)(2).  Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the Defendant and the safety of the community against any danger posed by the Defendant's pretrial release.  See United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and of the community", the judicial officer is compelled to consider the following factors:

(1)  the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2)  the weight of the evidence against the person;

(3)  the history and characteristics of the person, including:

  1.  the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

  2.  whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

8

(4) the nature and seriousness of the danger to any
other person or the community that would be posed
by the person's release . . . .

18 U.S.C. §3142(g).

## IV. Discussion of Whether Detention is Warranted

### A. Mr. Botchway's History and Characteristics

Mr. Botchway was born in Ghana on August 16, 1963. Mr.
Botchway entered the United States legally on a student visa in
1985. However, Mr. Botchway, who received his degree from Salem
County Community College in New Jersey in 1987, has overstayed his
visa and is currently in the United States illegally.[2]

Mr. Botchway has been residing in Delaware for the past five
months and for three years prior to that, he resided at different
addresses in Philadelphia, Pennsylvania.

Mr. Botchway's mother, father and a brother reside in Ghana.
Mr. Botchway has two sisters and three brothers residing in
Pennsylvania, a brother residing in Illinois and a sister residing
in New Jersey. Mr. Botchway has never married and has no children.

Mr. Botchway has been a self-employed computer consultant for
the past three years and for two years prior to that, was part
owner of a computer company in Pennsylvania.

---

[2]Mr. Botchway was taken into Ice custody in July 2005. It is not clear
whether at the time of this hearing, Mr. Botchway remained in ICE custody. If so,
then if he were released on conditions, he would be turned over to ICE rather
than allowed to reside in Leicester, Massachusetts with a proposed third party
custodian. For purposes of this Memorandum and Decision, I will assume that Mr.
Botchway was released from ICE custody prior to his appearance in this Court.

Although Mr. Botchway has a minor criminal record, involving convictions for theft, forgery and criminal impersonation, there is an outstanding bench warrant against him for violation of probation (Mr. Botchway's counsel indicated that the believes that the violation is failure to pay a fine) and he is a fugitive from justice on 1999 Pennsylvania state charges of simple assault, reckless endangerment and driving under the influence.

## B. Nature of the Offense; Weight of the Evidence; and Risk of Flight

### 1. Nature of the Offense

Mr. Botchway is charged with an offense which, if he is convicted, provides for a maximum penalty of 15 years incarceration and almost certain deportation following that incarceration.

### 2. Weight of the Evidence

The Indictment establishes probable cause for the charge against Mr. Botchway. At the hearing, Mr. Botchway's counsel established that Mr. Botchway has a viable motion to suppress the evidence against him as the fruit of an illegal stop and/or search. At the same time, if Mr. Botchway's motion to suppress is denied, the evidence against him, which includes his own statements, is overwhelming. Because of the strength of Mr. Botchway's arguments on a motion to suppress, I find that the Government's case has significant weaknesses[3]. Nevertheless, strength of the

[3]At the hearing, I denied Mr. Botchway's request to call two adverse witnesses, Trooper Hartwell who spoke with Trooper Pinkes concerning the stop and was present at the hearing and Trooper Pinkes, who was on vacation, but would

10

Government's case is but one factor I must consider in determining whether Mr. Botchway poses a risk of flight.

### 3.   Whether Mr. Botchway Poses a Risk of Flight

The United States has moved for detention pursuant to 18 U.S.C. §3142(f)(2)(A). The Government must prove by a preponderance of the evidence that Mr. Botchway poses a risk of flight and that there are no conditions or combination of conditions that would reasonably assure his appearance in this Court as required.

As stated previously, Mr. Botchway has a viable motion to suppress, which if allowed, would undercut the Government's case against him. Furthermore, Mr. Botchway has six siblings living in the United States. However, these factors, when weighed against the following factors, simply cannot support a finding that Mr. Botchway is likely to appear for trial in this case: Mr. Botchway is in the United States illegally and is subject to deportation regardless of whether he is found guilty of the offense charged in this Indictment; Mr. Botchway has no family ties to this District; Mr. Botchway has substantial ties to Ghana where his mother, father and a brother reside; Mr. Botchway has no significant assets in this country; Mr. Botchway has an outstanding bench warrant for

have been available if the hearing was continued to a later date. Mr. Botchway's counsel proffered that through these witnesses, he intended to establish that the stop of the Mitsubishi was illegal. Since I have assumed that Mr. Botchway has a viable motion to suppress based on the alleged illegality of the stop of the Mitsubishi and/or subsequent search of Mr. Botchway's possessions, any testimony of these troopers would be superfluous for purposes of the issue of detention.

11

violating the terms of his probation and has been a fugitive from justice for six years with respect to multiple charges pending against him in Pennsylvania; Mr. Botchway has been convicted of crimes of fraud (including criminal impersonation); Mr. Botchway has in the past used various aliases; and Mr. Botchway possessed fraudulent identification documents, including licenses, which he admitted creating.    Considering the totality of these circumstances, I find by a preponderance of the evidence that Mr. Botchway poses a risk of flight and that there are no conditions of combination of conditions that will assure his appearance in this Court as directed.

### V.   Order of Detention Pending Trial

In accordance with the foregoing memorandum,

IT IS ORDERED:

1.    That Mr. Botchway be committed to the custody of the Attorney General, or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2.    That Mr. Botchway be afforded a reasonable opportunity for private consultation with counsel; and

3.    On order of a Court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Mr. Botchway is detained and confined

12

shall deliver Mr. Botchway to an authorized Deputy United States
Marshal for the purpose of any appearance in connection with a
court proceeding.

## VI. RIGHT OF APPEAL

THE PERSON OR PERSONS DETAILED BY THIS ORDER MAY FILE A MOTION
FOR REVOCATION OF AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. §
3145(b).

CHARLES B. SWARTWOOD, III
MAGISTRATE JUDGE