UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | Criminal No. 05-CR40035-FDS |
| RICHARD BOTCHWAY | ) | |

### DEFENDANT'S MOTION FOR ORDER COMPELLING DISCOVERY FROM STATE POLICE AND INCORPORATED MEMORANDUM OF LAW

Pursuant to the 4th, 5th, 6th and 14th Amendments to the United States Constitution, Rules 6, 7, 12 and 16 of the Federal Rules of Criminal Procedure, the Local Rules of the U.S. District Court for the District of Massachusetts, and the Court's discretionary power to govern discovery, defendant Richard Botchway moves this Court to order the Massachusetts State Police to comply with each of the following requests, and for an order directing the Massachusetts State Police to permit the defendant to discover, inspect and copy the materials hereinafter designated:

1. Copies of all audio recordings of communications, including any turret tapes, involving any State Police on July 13, 2005 relating in any manner to the stop, detention and/or search of the vehicle in which the defendant was a passenger and/or its occupants.

2. All dispatch and/or logs and/or records relating in any manner to the stop, detention and/or search of the vehicle in which the defendant was a passenger and/or its occupants.

3. All communications of Trooper Pinkes, recorded or written, relating in any manner to the stop, detention and/or search of the vehicle in which the defendant was a passenger and/or its occupants.

4. All documents, records and/or recordings that identify, discuss or refer to any law enforcement officer that was present at the scene on July 13, 2005 and their observations and involvement at any time when the vehicle in which the defendant was passenger was pulled over until it was permitted to leave the scene.

5. All documents that relate to the presence of any camera in Trooper Pinkes' car at the time he stopped the vehicle in which the defendant was a passenger, including any documents relating to standard equipment carried in State Police vehicles.

6. Any citations issued on July 13, 2005 relating to the vehicle in which the defendant was a passenger.

7. Any photographs or video of the vehicle in which the defendant was a passenger, the occupants of the vehicle and/or the scene of the stop.

8. Any and all State Police documents and records pertaining to the period of January 1, 2004 through the date of this court's order,(i) for Trooper Pinkes; (ii) for the entire Holden barracks; and (iii) for the entire Sturbridge barracks, relating to:

    a. all citations and records for traffic stops, including warnings;

    b. all citations and records for traffic stops, including warnings, for any violation relating to a defective exterior light;

    c. all records and documents showing the racial or ethnic background of the drivers of the foregoing citations and warnings, including the original records and any compilations or analyses thereof;

    d.  all records and documents showing whether the vehicles that were stopped and/or their occupants were searched and/or subjected to dog sniffing;

    e.  all records and documents showing the "hit rate" for searches and dog sniffs of vehicles and/or their occupants, (i.e., whether the search/sniff resulted in the discovery of contraband).

9. Any and all written or oral directives of the State Police, including but not limited to regulations, guidelines, orders or training materials, relating to traffic stops.

10. Any and all State Police records relating to any internal affairs or similar complaints made against Officer Pinkes since January 1, 2000, and/or that were pending, or that resulted in any probationary status that was in effect, as of July 13, 2005 or while this case is pending, including but not limited to:

    a.  Any and all investigative files, compiled in accordance with any Massachusetts State Police rule or regulation, relating to internal affairs division matters and/or procedures concerning Trooper William Pinkes;

    b.  The nature of any charges against Trooper William Pinkes in any ongoing internal affairs investigations;

    c.  The results of any completed internal affairs investigation involving Trooper William Pinkes; and

    d.  Any and all complaints filed or received by civilians, co-workers and/or superiors against Trooper William Pinkes.

**FACTUAL BACKGROUND**

On July 13, 2005, at approximately 9:30 p.m., State Trooper William Pinkes was monitoring traffic exiting the Mass Pike in Auburn. Trooper Pinkes is stationed at the Holden barracks. The Town of Auburn is located in the patrol area of the Sturbridge barracks. Trooper Pinkes claims to have observed a vehicle pass by him with a Connecticut plate and a defective tail lamp. According to Pinkes' Incident Report, "the left rear brake lamp was stuck on." All three men in the car were black. Pinkes pulled the car over. The driver, Scott Wilson, produced a license but no registration. Pinkes ordered him out of the car and questioned him. Pinkes asserts that he then saw the front seat passenger, defendant Botchway, open the door, lean out and vomit. Pinkes then asked Botchway for identification and questioned him. Pinkes also questioned the rear seat passenger, Sanusi Mohammed. Pinkes claims that Mohammed told him that the car belonged to his girlfriend and consented to a search of the car. Mohammed denies consenting to a search. Pinkes searched inside a briefcase that was in the trunk and found fake identification cards and blank ID cards, and other materials implicating Botchway. Pinkes then questioned Botchway, allegedly eliciting inculpatory statements, including Botchway's admission that he used the printer in the trunk to make IDs.

### **Evidence Relating to the Stop**

Requests 1-7 of this motion seek materials relating to the stop of the vehicle. These materials are relevant to the credibility of Trooper Pinkes' contention that a brake light was defective. Did Trooper Pinkes report the broken light over his radio? Did any other Trooper see the broken light? Did Trooper Pinkes have the ability to photograph the broken light? Did he issue a citation? Did anyone other than Trooper Pinkes see Mr. Botchway vomit after the vehicle was stopped? What did the other Troopers who came

4

to the scene observe? All of the materials sought in Requests 1-7 are relevant to these inquiries and the issue of whether Trooper Pinkes was justified in stopping the vehicle, questioning the three men and conducting a search.

**Evidence Relating to Racial Profiling**

In Commonwealth v. Lora, 16 Mass. L. Rptr. 715, 2003 WL 22350945 (Mass. Super.), Judge McCann allowed a motion to suppress approximately one kilogram of cocaine found in the trunk of a car that was searched by Trooper Pinkes and his line mate, Trooper Shugrue. Judge McCann found that the stop and search were consistent with racial profiling that violated the defendant's rights under the Equal Protection Clause of the Fourteenth Amendment.

Trooper Shugrue had stopped a car in Auburn occupied by two dark-skinned men for driving in the left lane when there were unoccupied lanes to the right. After the car was stopped, Trooper Pinkes came to the scene and assisted in the search. In support of the motion to suppress, the defendant submitted statistics and statistical analyses of vehicle stops conducted by Pinkes for the period of June 16, 2001- August 3, 2001 and stops conducted by Shugrue from August 22, 2001- February 18, 2002.

In evaluating the statistics presented regarding Trooper Pinkes, the court found:

a) Trooper Pinkes conducted non-inventory searches in 42% of the stops of African-American operators and 2% of the stops of Caucasians;

b) An African-American operator was 36.6 times more likely to be searched by Trooper Pinkes than a Caucasian;

c) With respect to searches conducted in Auburn, Pinkes had a minority search rate of 69.67% and a Caucasian search rate of 1.58%, resulting in a

disparity of 37.7%, 28 times greater than the State Police's minority search rate.

Judge McCann noted that an Equal Protection violation may be shown "by using statistics to demonstrate a significant disparity." (citing <u>United States v. Armstrong</u>, 517 U.S. 456, 467 (1996) and <u>Chavez v. Illinois State Police</u>, 251 F.3d 612, 637 (7th Cir. 2001)). Judge McCann found that the statistics presented by the defendant demonstrated a prima facie showing of discrimination that went unrebutted by the Commonwealth: "The Court finds that the record . . . leaves no reasonable conclusion but that Shugrue stopped the motor vehicle . . . because of the race of the [occupants]."

The statistics relating to Trooper Pinkes reviewed by Judge McCann were significantly worse than the statistics relating to Trooper Shugrue. In comparison to Pinkes' minority search rate of 69.67%, Shugrue's minority search rate was 33.19%. Shugrue's minority search rate was 13 times greater than the State Police average; Trooper Pinkes' was 28 times greater. Because it was Shugrue that stopped the car, Judge McCann focused particularly on Shugrue's somewhat less troubling statistics. But even as to Shugrue's statistics, Judge McCann found that there was no avoiding the conclusion that the vehicle was stopped because the occupants were dark-skinned.

Defendant Botchway wishes to conduct a statistical analysis that might establish an Equal Protection Violation. The fact that Judge McCann found such a violation based on review of statistics from an earlier time period illustrates that the defendant has a good faith basis for this inquiry. The materials sought in request no. 8 are necessary to conduct this analysis.

The specific materials sought by the defendant are based upon suggestions made by an expert social scientist who has been involved in major studies of racial profiling, including a study released in May 2005 by the Institute on Race and Justice at Northeastern University, an analysis of more than 1.5 million citations by over 350 Massachusetts law enforcement agencies during the period of April 2001 - June 2003. The defendant does not have this expert's consent to use his name at this time. The time period sought, 2004-2005, and the request for materials from both the Holden and Sturbridge barracks are needed to establish a sufficient supply of data and to compare Pinkes' history to others. The Sturbridge barracks is an appropriate comparison sample based upon geographic proximity and the fact that Auburn, where the stop was made, is in the Sturbridge patrol region. Thus the data sought would enable the defendant to compare Trooper Pinkes to other troopers making stops and conducting searches in Auburn and the surrounding region.

<u>Evidence Relating to Internal Affairs Matters and Complaints</u>

The defendant may seek to suppress evidence that stemmed from Trooper Pinkes' search of the vehicle by demonstrating that there was no traffic violation to begin with and/or that even if there was a violation the reason the car was pulled over was the race of the occupants. Either way, Trooper Pinkes' attitude and behavior toward minorities is relevant. His credibility is relevant. His violation of state police policies and regulations would be relevant. The defendant seeks materials relating to internal affairs matters and complaints that may assist the defendant in establishing racial bias, a lack of credibility and/or violation of State Police policies and regulations.

Counsel would agree to a protective order barring, without explicit permission of the court, (1) any disclosure of any such records other than oral disclosure to the defendant, and (2) any copying or dissemination except either to counsel's agents or (after offer of proof) for use in court.

Pursuant to the Massachusetts public records statute, and without even considering the constitutional rights of the defendant, the internal affairs records sought are not privileged.  Worcester Telegram v. Chief of Police, 436 Mass. 378, 386 (2002) (internal affairs' records are subject to subpoena by a newspaper; ". . . exemption to public records disclosure can only be ascertained after the 'records' have been reviewed to determine their precise nature."; see also In the Matter of A Subpoena, 436 Mass. 784, 798, fn. 9 (2002):

> We also note that while the witness raised privacy interests as a basis for quashing the subpoena, he has made no effort . . . to suggest any means by which the relevant information could be provided . . . while simultaneously providing some additional measure of protection to the privacy interests at stake.  Alternatives such as partial redaction, in camera inspection, limitations on copying of the documents, or restrictions on who could see the documents, were never even suggested . . . Rather, the witness has asserted privacy interests as part of an "all or nothing" strategy seeking to block this discovery in its entirety.

### CONCLUSION

For the foregoing reasons, the defendant's Motion for Order Compelling Discovery From State Police should be allowed.

Richard Botchway
By his Attorney,

/s/ Keith Halpern

Keith Halpern, BBO# 545282
4 Longfellow Place, 37th Floor
Boston, MA 02114
(617) 694-9974

8