UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 05-CR40035-FDS |
| RICHARD BOTCHWAY | ) ) ) | |

**DEFENDANT'S MOTION FOR LEAVE TO SUBPOENA MATERIALS FROM MASSACHUSETTS STATE POLICE**

Defendant Richard Botchway, pursuant to Fed. R. Crim. P. 17 (c), hereby moves this court to grant the immediate issuance of a subpoena to the Massachusetts State Police for the documents listed below.  These documents are relevant to an anticipated motion to suppress physical evidence seized in the course of an automobile stop conducted by State Trooper William Pinkes on July 13, 2005, as well as statements that were the fruit of the search.  Materials seized included allegedly false identification cards, a computer and an identification card printer.  A date for the filing of a motion to suppress has not been established.  The defendant requests that the subpoena be returnable within 30 days.  The materials are needed well in advance of a motion to suppress filing date as it will be necessary for the defendant to have the data analyzed.

The documents sought are:

1. Any and all State Police documents and records pertaining to the period of January 1, 2004 through the date of this court's order, (i) for Trooper William Pinkes; (ii) for the entire Holden barracks; and (iii) for the entire Sturbridge barracks, relating to: all citations and records for traffic stops, including warnings;

    a. all citations and records for traffic stops, including warnings, for any violation relating to a defective exterior light;

    b. all records and documents showing the racial or ethnic background of the drivers of the foregoing citations and warnings, including the original records and any compilations or analyses thereof;

    c. all records and documents showing whether the vehicles that were stopped and/or their occupants were searched and/or subjected to dog sniffing;

    d. all records and documents showing the "hit rate" for searches and dog sniffs of vehicles and/or their occupants, (i.e., whether the search/sniff resulted in the discovery of contraband).

2. All documents, records and/or recordings that identify, discuss or refer to any law enforcement officer that was present at the scene on July 13, 2005 and their observations and involvement at any time when the vehicle in which the defendant was a passenger was pulled over until it was permitted to leave the scene.

3. All documents that relate to the presence or absence of any camera in Trooper Pinkes' car at the time he stopped the vehicle in which the defendant was a passenger, including any documents describing standard equipment carried in State Police vehicles, and/or relating to Trooper Pinkes' access to a camera at the scene.

4. Any and all written or oral directives of the State Police, including but not limited to regulations, guidelines, orders or training materials, relating to traffic stops.

5. Any and all State Police records relating to any internal affairs or similar complaints made against Officer Pinkes since January 1, 2000, and/or that were pending,

or that resulted in any probationary status that was in effect, as of July 13, 2005 or while this case is pending, including but not limited to:

    a. Any and all investigative files, compiled in accordance with any Massachusetts State Police rule or regulation, relating to internal affairs division matters and/or procedures concerning Trooper William Pinkes;

    b. The nature of any charges against Trooper William Pinkes in any ongoing internal affairs investigations;

    c. The results of any completed internal affairs investigation involving Trooper William Pinkes; and

    d. Any and all complaints filed or received by civilians, co-workers and/or superiors against Trooper William Pinkes.

The requested subpoena is attached as Exhibit A to the accompanying Affidavit of Counsel. The standard form subpoena provides for a witness to produce the documents in court. The defendant suggests that an Order be entered providing that the subpoena may be satisfied without court appearance by the production of the materials directly to defense counsel.

As grounds for this motion, the defendant states:

**The Stop, Search and Seizure**

On July 13, 2005 State Trooper William Pinkes stopped a car being driven by Scott Wilson as it was exiting the Massachusetts Turnpike in Auburn. Trooper Pinkes' incident report states that as the car was exiting the Turnpike, he observed "a defective

tail lamp. The left rear brake lamp was stuck on." There were two passengers in the car, defendant Botchway and Sanusi Mohammed. All three men are black.

Mr. Wilson produced a license, but no registration. Trooper Pinkes observed that all three men appeared nervous. Mr. Mohammed told Trooper Pinkes that the car belonged to his girlfriend. Trooper Pinkes claims that Mr. Mohammed consented to a search of the vehicle. Mr. Mohammed denies consenting to a search.

Trooper Pinkes searched the trunk and found a briefcase. He looked in the briefcase and found papers belonging to Mr. Botchway, including blank identification cards and identification cards in the names of third parties, but bearing Mr. Botchway's photo. Trooper Pinkes then questioned Mr. Botchway. Mr. Botchway allegedly told Trooper Pinkes that he used the blank cards to make work ID's for people, and that he did this through the use of a computer and printer that Trooper Pinkes had seen in the trunk. Trooper Pinkes seized the materials found in Mr. Botchway's briefcase, the computer and the printer. Mr. Botchway was released.

On July 14th, by prearrangement, Mr. Botchway came to the State Police barracks in Holden to pick up his computer. Special Agent Patrick Cummings of the Immigration and Customs Enforcement Agency questioned Mr. Botchway. Mr. Botchway allegedly admitted that the seized licenses and computer equipment belonged to him and that he supplied the licenses to individuals to assist them in getting employment.

**Evidence of Racial Profiling by Trooper Pinkes in Commonwealth v. Lora**

In Commonwealth v. Lora, 16 Mass. L. Rptr. 715, 2003 WL 22350945 (Mass. Super.), Judge McCann of the Superior Court allowed a motion to suppress approximately one kilogram of cocaine found in the trunk of a car that was searched by

Trooper Pinkes and his line mate, Trooper Shugrue. Judge McCann found that the stop and search were consistent with racial profiling that violated the defendant's rights under the Equal Protection Clause of the Fourteenth Amendment.

Trooper Shugrue had stopped a car in Auburn occupied by two dark-skinned men for driving in the left lane when there were unoccupied lanes to the right. After the car was stopped, Trooper Pinkes came to the scene and assisted in the search. In support of the motion to suppress, the defendant submitted data and a statistical analysis of vehicle stops conducted by Pinkes for the period of June 16, 2001- August 3, 2001 and stops conducted by Shugrue from August 22, 2001- February 18, 2002.

In evaluating the statistics presented regarding Trooper Pinkes, the court found:

a) Trooper Pinkes conducted non-inventory searches in 42% of the stops of African-American operators and 2% of the stops of Caucasians;

b) An African-American operator was 36.6 times more likely to be searched by Trooper Pinkes than a Caucasian;

c) With respect to searches conducted in Auburn, Pinkes had a minority search rate of 69.67% and a Caucasian search rate of 1.58%, resulting in a disparity of 37.7%, 28 times greater than the State Police's minority search rate.

Judge McCann noted that an Equal Protection violation may be shown "by using statistics to demonstrate a significant disparity." (citing United States v. Armstrong, 517 U.S. 456, 467 (1996) and Chavez v. Illinois State Police, 251 F.3d 612, 637 (7th Cir. 2001)). Judge McCann found that the statistics presented by the defendant demonstrated a prima facie showing of discrimination that went unrebutted by the Commonwealth:

5

"The Court finds that the record . . . leaves no reasonable conclusion but that Shugrue stopped the motor vehicle . . . because of the race of the [occupants]."

The statistics relating to Trooper Pinkes reviewed by Judge McCann were significantly worse than the statistics relating to Trooper Shugrue. In comparison to Pinkes' minority search rate of 69.67%, Shugrue's minority search rate was 33.19%. Shugrue's minority search rate was 13 times greater than the State Police average; Trooper Pinkes' was 28 times greater. Because it was Shugrue that stopped the car, Judge McCann focused particularly on Shugrue's somewhat less troubling statistics. But even as to Shugrue's statistics, Judge McCann found that there was no avoiding the conclusion that the vehicle was stopped because the occupants were dark-skinned.

**Evidence of Racial Profiling in Northeastern University Study**

In May 2004 Northeastern University's Institute on Race and Justice issued a study, "Massachusetts Racial and Gender Profiling Final Report," pursuant to the legislative mandate of Chapter 228 of the Acts of 2000 to identify and provide to the Secretary of Public Safety a listing of state police units and municipalities that appear to have engaged in racial profiling. A copy of the report is filed herewith as Exhibit B to the Affidavit of Counsel. The data used to conduct the study is identical to the materials sought in this motion – traffic citations and warnings that identify the race of the drivers. The study focused on four areas of concern: 1) disparities in traffic citations given to residents, 2) disparities in citations given to all drivers including those who do not reside in a particular community, 3) disparities in receiving a citation versus a written warning, and 4) disparities in the likelihood of being searched once cited.

6

Trooper Pinkes works out of the Holden barracks, with is in State Police Unit C. The study found statistically significant evidence of racial profiling for Unit C in the three of the four criteria. See, Northeastern Study, p. 49.

**The Materials Requested**

Dean Jack McDevitt is the Director of Northeastern's Institute on Race and Justice. In retaining the Institute on Race and Justice to perform the racial profiling analysis, the Commonwealth requested that Dean McDevitt not testify as an expert against the Commonwealth in matters involving racial profiling issues. While Dean McDevitt is not able to assist the defendant as an expert witness, he was able to discuss with defendant's counsel the data which would be appropriate to perform a statistical analysis focusing on Trooper Pinkes. In particular, Dean McDevitt suggested obtaining data concerning the entire Holden and Sturbridge barracks in order to provide a basis of comparison between Trooper Pinkes and other Troopers working in geographically similar regions. The Sturbridge barracks includes the Town of Auburn, which is where the vehicle stop in this case occurred.

**This Court Previously has Ordered the Production of Similar Data**

In United States v. Jose Otero, Crim No. 04-40030, the defendant, ex parte, requested that the court order the Massachusetts Registry of Motor Vehicles to produce copies of citations written by two police officers of the Worcester Police Department. In support of the motion, defense counsel submitted an affidavit stating that he was seeking the materials to pursue an investigation "into whether the police may have stopped the defendant as a result of racial profiling." The defendant sought copies of all traffic citations written by the two officers over a two year period, from October 2002- October

7

2004. Magistrate Swartwood issued an Order compelling the production of the citations on an ex parte basis.

Copies of Magistrate Swartwood's Order, the defendant's Motion and counsel's affidavit in support of the motion are provided as Exhibit C to the accompanying Affidavit of Counsel.

**Limitations on Discovery Applicable to Selective Prosecution Claims do not Apply**

The defendant previously requested copies of the citations from the Government. The Government declined to produce the citations, relying upon United States v. Armstrong, 517 U.S. 456 (1996), for the proposition that the defendant must make a credible showing of different treatment of similarly situated persons before discovery can be ordered in a selective prosecution case. Armstrong is not applicable.

Armstrong is concerned with the "showing necessary for a defendant to be entitled to discovery on a claim that the prosecuting attorney singled him out for prosecution on the basis of his race." Id. at 458. Mr. Botchway makes no such claim. Rather, he seeks discovery for the purpose of an anticipated suppression motion. The discovery is relevant for two purposes. First, a pattern of racial profiling would be relevant to the issue of Trooper Pinkes' credibility with respect to the observations he claims justified the search, such as his assertion that there was consent, or his assertion that a tail light was broken. Second, racial profiling would be relevant to the issue of whether a broken tail light was used as a pretext for a stop and search.

The materials sought in Armstrong were Government work product. The citations sought by Mr. Botchway are not.

The Court in <u>Armstrong</u> stated that a "selective prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecution has brought the charge for reasons forbidden by the Constitution." <u>Id</u>. at 463. In contrast, suppression of an illegal search is a defense on the merits. The issue of prosecutorial policy that is the focus of <u>Armstrong</u> has no application.

**<u>Racial Profiling as a Basis for Suppression</u>**

<u>Commonwealth v. Lora</u>, <u>supra</u>, provides a thorough review of the state of the law with respect to racial profiling as a basis for suppression of evidence seized in a traffic stop. Judge McCann notes that the New Jersey courts have been at the forefront of addressing claims of racial profiling. Judge McCann noted that "like Massachusetts, the New Jersey courts interpret their state constitution's Equal Protection provision in the same way that the federal courts interpret the Fourteenth Amendment." <u>State v. Maryland</u>, 167 N.J. 471, 485 (2001).

In <u>Maryland</u>, the New Jersey Supreme Court held that suppression of evidence on Fourteenth Amendment grounds was warranted when: (1) the defendant through statistical evidence, made out a viable claim of selective enforcement of the applicable traffic laws, or (2) the court disbelieved the officer's testimony regarding the occurrence of the traffic violation on which the stop was predicated.

In <u>State v. Kennedy</u>, 247 N. J. Super. 21, 27 (App. Div. 1991), the Court held that an inference of selective enforcement can be roused through statistical evidence and through the establishment of a pattern of conduct. "Selective enforcement of motor vehicle law on the basis of race . . . is a violation of equal protection." <u>Flowers v. Fiore</u>, 239 F. Supp. 2d 173, 178 (D.R.I. 2003) (citing <u>Chavez v. Illinois State Police</u>, 251 F. 3d

9

612, 635 (7th Cir. 2001). Defendant Botchway seeks to establish that the search of the vehicle he was in stemmed from such racial profiling. The copies of citations sought by the defendant are essential to this defense.

**Evidence Relating to Internal Affairs Matters and Complaints**

The defendant may seek to suppress evidence that stemmed from Trooper Pinkes' search of the vehicle by demonstrating that there was no traffic violation to begin with and/or that even if there was a violation the reason the car was pulled over was the race of the occupants. Either way, Trooper Pinkes' attitude and behavior toward minorities is relevant. His credibility is relevant. His violation of state police policies and regulations would be relevant. The defendant seeks materials relating to internal affairs matters and complaints that may assist the defendant in establishing racial bias, a lack of credibility and/or violation of State Police policies and regulations.

Counsel would agree to a protective order barring, without explicit permission of the court, (1) any disclosure of any such records other than oral disclosure to the defendant, and (2) any copying or dissemination except either to counsel's agents or (after offer of proof) for use in court.

Pursuant to the Massachusetts public records statute, and without even considering the constitutional rights of the defendant, the internal affairs records sought are not privileged. Worcester Telegram v. Chief of Police, 436 Mass. 378, 386 (2002) (internal affairs' records are subject to subpoena by a newspaper; ". . . exemption to public records disclosure can only be ascertained after the 'records' have been reviewed to determine their precise nature."; see also In the Matter of A Subpoena, 436 Mass. 784, 798, fn. 9 (2002):

    We also note that while the witness raised privacy interests as a basis for quashing the subpoena, he has made no effort . . . to suggest any means by which the relevant information could be provided . . . while simultaneously providing some additional measure of protection to the privacy interests at stake.  Alternatives such as partial redaction, in camera inspection, limitations on copying of the documents, or restrictions on who could see the documents, were never even suggested . . . Rather, the witness has asserted privacy interests as part of an "all or nothing" strategy seeking to block this discovery in its entirety.

## CONCLUSION

For the foregoing reasons, the court should grant defendant Botchway's Motion for Leave to Subpoena Materials from Massachusetts State Police.

                                Richard Botchway
                                By his Attorney,

                                /s/ Keith Halpern
                                _____
                                Keith Halpern, BBO# 545282
                                4 Longfellow Place, 37th Floor
                                Boston, MA 02114
                                (617) 694-9974