UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.            )<br>)<br>RICHARD BOTCHWAY,   )<br>)<br>    Defendant.    ) | Cr. No. 05-40035-FDS |

**GOVERNMENT'S POST-HEARING MEMORANDUM OPPOSING MOTION TO SUPPRESS**

The United States of America, by Assistant U.S. Attorney David Hennessy, files this memorandum of law in opposition to Defendant Richard Botchway's motion to suppress evidence, and to address issues raised by the Court during a hearing on the motion. As shown below, the motion should be denied: it was objectively reasonable for Trooper Pinkes to believe that Mohammed, the person who consented to the search, had apparent authority to do so; it was also reasonable for Trooper Pinkes to believe, based on Mohammed's words and gesture, that Mohammed's consent to search the car extended to the briefcase belonging to Defendant.

**It was Objectively Reasonable to Believe
Mohammed had Authority to Consent to Search**

Because a person may voluntarily waive his Fourth Amendment rights, no warrant is required where the defendant consents to a search. United States v. Matlock, 415 U.S. 164, 171 (1974). Based on the concept of assumption of risk, this exception to the

1

warrant requirement extends to consent legitimately obtained from a third party. Id.  Thus, where a defendant allows a third party to exercise actual or apparent authority over the defendant's property, he is considered to have assumed the risk that the third party might permit access to others, including government agents. Matlock, 415 U.S. at 171 n. 7.  "Thus, third-party consent to a search can legitimately be given whether the premises to be searched are as expansive as a house or as minute as a briefcase.  The key to consent is actual or apparent authority over the area to be searched." United States v. Basinski, 226 F.3d 829, 834 (7th Cir. 2000).

   The government bears the burden of establishing the effectiveness of a third party's consent.  Illinois v. Rodriquez, 497 U.S. 177, 179 (1990).  It can do so in three ways.  First, the government can come forward with persuasive evidence of both shared use and joint access to or control over a searched area, which would demonstrate actually authority to consent.  United States v. Welch, 4 F.3d 761, 764 (9th Cir. 1993)(citing cases).  Second, it can show that the owner of the property to be searched has expressly authorized a third party to give consent.  Id.  Finally, it may establish consent by means of the "apparent authority" doctrine.  Id., citing Illinois v. Rodriquez, 497 U.S. at 188.

   We submit that the evidence shows that Mohammed had apparent

2

authority to give consent to Pinkes to search the briefcase.[1] Under the apparent authority doctrine, a search is valid if the government proves that the searching officer "reasonably (though erroneously) believe[d] that the person who consented had authority to do so." Illinois v. Rodriquez, 497 U.S. at 186. Determination of consent must be judged against an objective standard: would the facts available to the searching officer at the moment "warrant a man of reasonable caution in the belief" that the consenting party had authority over the expressed object of the search. Id. at [].

Applying this standard, it was reasonable for Pinkes to believe that Mohammed had apparent authority to consent to the search the briefcase. First, as the car stop developed, Mohammed became the person with apparent control of the car. He told Pinkes that the car belonged to his "girlfriend, Sophia." This statement was enormously significant; none of the occupants produced registration for the car or evidence of ownership. Hence, Mohammed's statement was the only piece of information Pinkes had regarding the car's ownership. The statement placed Mohammed in a position of authority with respect to control of

---

[1] Mohammed clearly had actual authority to consent to a search of the car. See Welch, 4 F.3d at 764 (By sharing access to and use of car with driver, passenger relinquished, in part, her expectation of privacy in the car). However, for this exception to apply to the briefcase, we would also have to show shared access to the briefcase. Id. This the government cannot do.

the car and its contents, and access to them.[2]

This appearance of authority was reinforced by the Mohammed's words and gesture in giving consent. He told Pinkes to "look all you want," and waved his arm expansively across the car. Pinkes was justified in believing that Mohammed was the person with a privacy interest in the car and its containers. Contra Welch, 4 F.3d at 764 (that passenger relinquished an expectation in car by traveling in it, did not mean she had similarly limited her privacy interest in purse in trunk of car; "[t]he shared control of 'host' property does not serve to forfeit the expectation of privacy in containers within that property." *quoting* United States v. Karo, 468 U.S. 705, 725-27 (1984)(O'Connor, J., concurring)).

Third, Botchway took no affirmative steps to protect his privacy interest. He did not lock the briefcase. See Florida v. Jimeno, 500 U.S. 248, 251-52 (1991) ("It is very likely unreasonable to think that a suspect, by consent to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk, but it is otherwise with respect to a closed

---

[2]Moreover, it is entirely plausible that Mohammed made such a statement, since the owner, Sophia Abu, testified at the hearing that she had loaned the car to the driver based on the driver's relationship to her long-time friend, Mohammed. Whether Mohammed used the word girlfriend, or whether he meant it in a romantic sense, are beside the point. Rather, Abu's testimony significantly corroborated Pinkes' testimony that Mohammed said the car belonged to his "girlfriend."

paper bag."). Similarly, Botchway did not place any external markings on the briefcase which would have caused a reasonable person to believe that a third party might lack authority to consent to search.  See United States v. Infante-Ruiz, 13 F.3d 498, 505 (1st Cir. 1994)(third party's general consent qualified by statement that briefcase belonged to another).  To the contrary, Botchway placed an unlocked, unmarked suitcase into an area of joint access and control of all the occupants: the trunk. In doing so, Botchway surrendered, in part, an expectation of privacy, and assumed the risk that another would give consent to search it.

Next, as the analysis in Welch indicates, the nature of the container itself can be used to gauge the reasonableness of an officer's belief in a third party's apparent authority to consent to a search.  Here, there is nothing about the nature of the container, a briefcase that would indicate that Mohammed did not have apparent authority to consent.[3]  As noted above, the briefcase was unlocked and unidentified.  It was under the common access and control of each of the occupants.  At the time of consent, Pinkes was aware that the car had been driven to Delaware to pick up Botchway.  Had the container been a travel

---

[3]Concededly, cases have observed that few places outside the home justify a greater expectation of privacy than does a briefcase.  See e.g. United States v. Freire, 710 F.2d 1515, 1519 (11th Cir. 1983)

bag or suitcase which, it could be reasonably expected, contained clothing, perhaps Pinkes would have been required to inquire further and determine if it belonged to Botchway.  However, under the circumstances, it was reasonable for Pinkes to believe that Mohammed had authority to consent to its search.  See Matlock, 415 U.S. at 164 (search of diaper bag in bedroom closet proper because consent given by one with common authority over bedroom).

**Scope of the Search**

For all the reasons cited in the government's opening brief, we further submit it was objectively reasonable under the circumstances, for Pinkes to believe that the scope of Mohammed's consent permitted him to open the briefcase.  In particular, Mohammed gave unqualified consent in both deed and gesture, stating that Pinkes could "look all you want."  Second, no one objected to the search, including Botchway, even when Pinkes asked Botchway if the briefcase belonged to him.  Cf. Infante-Ruiz, 13 F.3d at 505 (consenter told officer that briefcase belonged to another and therefore it was unreasonable to infer that consent extended to briefcase); Jimeno, 500 U.S. at 252 (a person may delimit the scope of a search; failure to do so indicates consent is broad).

**CONCLUSION**

For all these reasons, the motion to suppress should be denied.

                                      Respectfully submitted,

                                      MICHAEL J. SULLIVAN
                                      United States Attorney

                          By:  /s/ David Hennessy
                                      David Hennessy
                                      Assistant U.S. Attorney

CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

>Keith Halpern
>4 Longfellow Place
>37th Floor
>Boston, Massachusetts 02114-2838

This 24th day of May, 2006.

>/s/ David Hennessy
>David Hennessy
>Assistant U.S. Attorney