UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 05-CR40035-FDS |
| RICHARD BOTCHWAY | ) ) | |

**DEFENDANT'S POST-HEARING MEMORANDUM
IN SUPPORT OF MOTION TO SUPPRESS**

Defendant Botchway submits this memorandum in further support of his motion to suppress. This memorandum addresses issues raised by the court during the May 17th hearing on the defendant's motion.

**A. Apparent Authority May be Sufficient**

The court raised the issue of whether a search may legitimately be based on an officer's reasonable but erroneous belief that a third party had authority to consent to a search. "Where a third party lacks actual authority to consent to a search, that party's consent is nonetheless effective where law enforcement 'reasonably (though erroneously) believe[d]' that the third party had authority to consent. Illinois v. Rodriguez, 497 U.S. 177, 186 (1990)." United States v. Santiago, 405 F.Supp.2d 65, 72 (D. Mass. 2005).

**B. The Court Should not Credit Trooper Pinkes' Testimony that he Observed a Broken Brake Light.**

Provided as Attachment A hereto is a copy of the results of an on-line search of the U.S. Naval Observatory's website for sun and moon data for Worcester County on July 13, 2005. The document states that sunset was at 8:23 p.m. and twilight ended at

8:57 p.m. The defendant requests that the court accept this document as the next exhibit and take judicial notice of the data contained therein.

Trooper Pinkes testified that he was parked perpendicular to a single lane of traffic exiting the Pike. Given his proximity to the traffic and the short time after twilight that the search occurred, it is likely that Trooper Pinkes was able to see that the driver and front seat passenger were black.

### C. The Court Should not Credit Trooper Pinkes' Testimony that Sanusi Mohammed Consented to a Search.

Provided as Attachment B hereto is a copy of a Massachusetts State Police consent form from an unrelated criminal case. The defendant requests that the court accept this document as the next exhibit, and take judicial notice that the State Police do utilize consent forms. If the court does not take such judicial notice, then the defendant requests that the hearing on his motion be reconvened for the sole purpose of permitting the defendant to serve a subpoena on the State Police, Holden Barracks, for the production of consent forms that were available to Trooper Pinkes.

Trooper Pinkes testified that the State Police do not use written consent forms. This testimony is not credible, as this attachment demonstrates.

Trooper Pinkes' failure to use a consent form should be regarded as a strategic decision based on his assumption that a judge, when faced with a credibility contest between a Trooper and a defendant, will accept the word of the Trooper. The court should consider Trooper Pinkes' failure to use a consent form, and his testimony that the State Police do not have such a form, as evidence that no consent ever was given.

The Government asserts that the court should find that Mohammed's consent actually occurred and was reasonable because the materials in the trunk did not appear to

2

be illegal. But this explanation is inconsistent with the fact that the driver, Scott Wilson, allegedly lied to Trooper Pinkes, stating that he did not know who the car belonged to. Why would Wilson have lied about his girlfriend, Sophia Adu, loaning him the car if there was no fear or concern?

### D. Even if the Court Credits Trooper Pinkes' Testimony, he had no Reasonable Basis to Believe that Mohammed was Consenting to a Search of Botchway's Briefcase.

The scope of consent "is determined by a test of objective reasonableness: 'what would the typical reasonable person have understood by the exchange between the officer and the subject?'" United States v. Santiago, 405 F.Supp.2d at 44 (citing United States v. Melendez, 301 F.3d 27, 32 (1st Cir. 2002)).

Accepting Trooper Pinkes' testimony, we have a back seat passenger who did not own the car telling a Trooper to "search all you want." Trooper Pinkes had no reason to know if Mohammed even knew that a briefcase was in the trunk, let alone consent to a search of its contents.

At the hearing the court asked counsel to look for additional cases with similar fact patterns. Defense counsel has not found any cases closer to the facts in this case than those referred to in defendant's initial memorandum, particularly United States v. Infante-Ruiz, 13 F.3d 498 (1st Cir. 1994). In Infante-Ruiz the Court held that it was not reasonable for the police to believe that the driver of a car, who consented to a search of the car and gave police a key to the trunk, had consented to the search of a briefcase in the trunk that belonged to a passenger.

The Government attempts to distinguish Infante-Ruiz based upon the fact that police asked the driver who the briefcase belonged to and he replied that the briefcase

3

belonged to a passenger. This is distinction makes no difference. Trooper Pinkes did not bother asking Mohammed who the briefcase belonged to, he just opened it. It would be nonsensical for Trooper Pinkes to have greater freedom to search the briefcase by virtue of his lack of concern over whom it belonged to. Moreover, once he opened the briefcase he discovered it belonged to Botchway. At that point he was in the same position as the police in Infante-Ruiz -- he was about to search a briefcase that he knew did not belong to the individual who had consented to the search.

In addition, there were factors in Infante-Ruiz that were far more suggestive of consent to search closed containers in the trunk than were present in the search conducted by Trooper Pinkes. In Infante-Ruiz it was the driver, not a passenger, who consented to the search. The driver gave the police a key to the trunk. He stood by and watched without objection as the police searched the trunk. He did not object to his own briefcase being searched, before the police opened the passenger's briefcase. In contrast, there is no evidence that Trooper Pinkes had any reason to believe that Mohammed knew there was a briefcase in the trunk. There is no evidence that Mohammed saw Trooper Pinkes search the briefcase. There is no evidence that Mohammed gave Trooper Pinkes the key to the trunk, or authorized him to go into the trunk.

In sum, there is no rational basis for this court to distinguish the holding of Infante-Ruiz. If anything, that case presented a closer call than the instant matter.

**E. Botchway's Silence Does not Suggest Consent.**

The Government asserts that consent may be inferred from Botchway's failure to object to Trooper Pinkes' search of his briefcase. The law is to the contrary.

4

While the Government may, in some circumstances, establish consent from a defendant's cooperative attitude, the Government bears the burden of proof to establish voluntary consent. United States v. Luna-Rojas, 28 F.Supp.2d 54, 62 (D.P.R. 1998) (citing Florida v. Roger, 460 U.S. 491 (1983)).

In United States v. Weidul, 325 F.3d 50 (1st Cir. 2003), the Court held that consent to search could not be inferred where a police officer stated, "I'm going to look in here," and received the response, "Okay." The Court held that the "uttering of the word 'okay' as [the police officer] stated that he was about to search . . . was not a consent to search - it was a simple acquiescence to what any reasonable person would have perceived . . . as police conduct tantamount to a claim of lawful authority to search . . ." Id. at 54 (citing District Court opinion of Judge Hornby, 227 F.Supp. 161 (D.Me. 2002); see also United States v. Wald, 216 F.3d 1222 (10th Cir. 2000) (defendant's failure to object to search of trunk did not indicate consent where police officer already had found contraband and it was reasonable to conclude that defendant did not believe he had any power to prevent further search of the trunk).

There is even less evidence to suggest Botchway's consent. He did not say, "okay" or anything else in acquiescence. Unlike Weidul, Botchway did not know that Trooper Pinkes intended to search his briefcase until after Trooper Pinkes had opened the briefcase, examined its contents and found inculpatory materials.

## CONCLUSION

For the foregoing reasons, the court should grant defendant Botchway's Motion to Suppress.

                                          Richard Botchway
                                          By his Attorney,

                                          /s/ Keith Halpern
                                          _____
                                          Keith Halpern, BBO# 545282
                                          4 Longfellow Place, 37th Floor
                                          Boston, MA 02114
                                          (617) 694-9974

# ATTACHMENT A

**U.S. Naval Observatory**
**Astronomical Applications Department**

## Sun and Moon Data for One Day

The following information is provided for Worcester, Worcester County, Massachusetts (longitude W71.8, latitude N42.3):

```
        Wednesday
        13 July 2005            Eastern Daylight Time

                SUN
        Begin civil twilight       4:49 a.m.
        Sunrise                    5:23 a.m.
        Sun transit               12:53 p.m.
        Sunset                     8:23 p.m.
        End civil twilight         8:57 p.m.

                MOON
        Moonset                   11:37 p.m. on preceding day
        Moonrise                  12:12 p.m.
        Moon transit               6:09 p.m.
        Moonset                   11:55 p.m.
        Moonrise                   1:18 p.m. on following day
```

Phase of the Moon on 13 July:   waxing crescent with 40% of the Moon's visible disk illuminated.

First quarter Moon on 14 July 2005 at 11:20 a.m. Eastern Daylight Time.

---

Census Bureau map of Worcester area

# ATTACHMENT B

 

# Massachusetts State Police
## Middlesex District Attorney's Office
40 Thorndike Street Cambridge, MA 02141
Middlesex Detectives Unit

*Written Consent For Search*

I, __HARJIVEN SINGH CHEEMA__ having been informed of my constitutional rights not to have a search made of the premises hereinafter mentioned without a search warrant, and of my right to refuse to consent to such a search, hereby authorize __Tpr Canavan, Tpr Belanger, and Tpr Mackin__ and

Officers of the Massachusetts State Police, to conduct a complete search of my __Truck cab and trailer__ described as __a 1998 Freightliner bearing Ontario registration # PT5133 and a white FV trailer bearing Ontario registration #A6371M__ located at __SP Weston__.

These officers are authorized by me to take from my __truck cab and trailer__ any letters, papers, materials or other property, which they may desire and consider pertinent to the investigation. I understand that any such evidence found may be seized and used against me in a court of law.

I am giving this written permission to the above-named officers freely and voluntarily and without threats or promises expressed or implied of any kind.

Witnessed: [signature]
Date/Time: 5-24-03  7:30 a

Signed: X [signature]
Date/Time: 5-24-03  7:30 a

*Excellence In Service Through Quality Policing*